UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LLOYD WILLIAM JOHNS,

                  Petitioner,

v.                               Case No. 3:09-cv-341-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                  Respondents.

_____

## ORDER

### I. Status

Petitioner Johns initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on March 30, 2009, pursuant to the mailbox rule. Additionally, he filed a Memorandum of Law in Support of his Petition (Memorandum) (Doc. #2). Johns challenges a 2004 state court (Duval County, Florida) judgment of conviction for sexual battery upon a person twelve years of age or older with the use of physical force likely to cause serious personal injury (count one), sexual battery upon a person twelve years of age or older (count two), and aggravated battery on a person sixty-five years of age or older (count four) on three grounds.  Respondents have submitted a

memorandum in opposition to the Petition. <u>See</u> Respondents' Response
to Petition for Habeas Corpus (Response) (Doc. #11); Exhibits
(Resp. Ex.) (Doc. #12).   On April 17, 2009, the Court entered an
Order to Show Cause and Notice to Petitioner (Doc. #7), admonishing
Petitioner regarding his obligations and giving Petitioner a time
frame in which to submit a reply.   Petitioner submitted a brief in
reply on November 26, 2010.   <u>See</u> Petitioner's Response to the
State's Response to Petitioner's Petition for Habeas Corpus Relief
(Reply) (Doc. #24).   This case is ripe for review.

## II. Procedural History

On April 1, 2004, the State of Florida charged Lloyd William
Johns with three counts of sexual battery and one count of
aggravated battery on a person sixty-five years of age or older.
Resp. Ex. A at 18-19, Amended Information.   After jury selection,
Johns proceeded to a jury trial.   Resp. Exs. C; D; E; F; G; H,
Transcripts of the Jury Trial Proceedings (Tr.).   At the conclusion
of the trial, a jury found Johns guilty of sexual battery upon a
person twelve years of age or older with the use of physical force
likely to cause serious personal injury (count one), the lesser
included offense of sexual battery upon a person twelve years of
age or older (count two), and aggravated battery on a person sixty-
five years of age or older (count four).   Tr. at 1113-14; Resp. Ex.
A at 91-92, 94, Verdicts. The jury found Johns not guilty of count
three.   Tr. at 1114; Resp. Ex. A at 93, Verdict.   On August 11,

2004, the trial court sentenced Johns, to a term of forty years of imprisonment on count one, fifteen years of imprisonment on count two, to run concurrently to count one, and thirty years of imprisonment on count four, to run concurrently.  Resp. Ex. A at 102-09, Judgment.

On appeal, Petitioner, through counsel, filed an Initial Brief, arguing that: (1) the trial court erroneously denied motions for judgment of acquittal as to sexual battery and aggravated battery in that the State failed to prove beyond a reasonable doubt that the victim suffered great bodily harm, permanent disability or disfigurement, and (2) the trial court erroneously overruled Johns' objections to the prosecutor's comments that denigrated and disparaged the defense's theory in the case.  Resp. Ex. I.  The State filed an Answer Brief, <u>see</u> Resp. Ex. J, and Petitioner filed a Reply Brief, <u>see</u> Resp. Ex. K.  On October 26, 2005, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion.  <u>Johns v. State</u>, 913 So.2d 603 (Fla. 1st DCA 2005); Resp. Ex. L.  The mandate issued on November 14, 2005.[1]  Resp. Ex. L.  Petitioner did not seek review in the United States Supreme Court.

On September 26, 2006, Petitioner filed a <u>pro</u> <u>se</u> petition for writ of habeas corpus, asserting that appellate counsel (James T.

_____

[1] Online docket, <u>Lloyd Johns v. State of Florida</u>, Case No. 1D04-4184, website for the First District Court of Appeal (http://www.1dca.org).

3

Miller) was ineffective for failing to raise the following issues on direct appeal: (1) insufficiency of the evidence, and (2) malicious prosecution.  Resp. Ex. M.  Without requiring a response from the State, the appellate court denied the petition on the merits on October 30, 2006.  <u>Johns v. State</u>, 943 So.2d 847 (Fla. 1st DCA 2006); Resp. Ex. O.  Johns filed a motion for rehearing, <u>see</u> Resp. Ex. P, which the court denied on December 14, 2006, <u>see</u> Resp. Ex. Q.[2]

While his state habeas petition was still pending, Johns filed a <u>pro</u> <u>se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion).  Resp. Ex. R at 1-22.  In his request for post conviction relief, Petitioner asserted that his counsel was ineffective because she (Lara Nezami): failed to object and request a mistrial due to the prosecutor's prejudicial remarks in front of the jury (ground one); failed to have a psychological evaluation conducted on the victim (ground two); and failed to cross-examine the victim relating to her previously accusing her sister's husband of attempted rape (ground three).  The circuit court denied Johns' Rule 3.850 motion on May 20, 2008.  <u>Id</u>. at 92-99.

Johns appealed the denial and filed a brief.  Resp. Ex. T. The State filed a notice that it would not file an Answer Brief.

---

[2] <u>Johns v. State</u>, Case No. 1D06-5128, http://www.1dca.org.

Resp. Ex. U.  On January 23, 2009, the appellate court affirmed the denial per curiam.  <u>Johns v. State</u>, 4 So.3d 1225 (Fla. 1st DCA 2009); Resp. Ex. V.  Johns filed a motion for rehearing, <u>see</u> Resp. Ex. W, which the court denied on March 13, 2009, <u>see</u> Resp. Ex. X. The mandate issued on April 1, 2009.  Resp. Ex. Y.[3]

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  <u>See</u> 28 U.S.C. § 2244(d); Response at 2-3.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>.

---

[3] <u>Johns v. State</u>, Case No. 1D08-3820, http://www.1dca.org.

denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

### V.   Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> > A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context.  An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

> Jennings v. McDonough, 490 F.3d 1230, 1236
> (11th Cir. 2007) (quotation marks and
> citations omitted).  In sum, "a federal habeas
> court making the 'unreasonable application'
> inquiry should ask whether the state court's
> application of clearly established federal law
> was objectively unreasonable."  Williams, 529
> U.S. at 409, 120 S.Ct. at 1521.  Finally, 28
> U.S.C. § 2254(e)(1) commands that for a writ
> to issue because the state court made an
> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing evidence."[4]
> 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert.

denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling.  Harrington v. Richter, 131 S.Ct. 770,

785 (2011) (holding that section 2254(d) does not require a state

court to give reasons before its decision can be deemed to have

been adjudicated on the merits); Wright v. Sec'y for the Dep't of

Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S.

906 (2003).  Thus, to the extent that Petitioner's claims were

---

[4] This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." Bui v.
Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI.  Exhaustion/Procedural Default

There are prerequisites to a federal habeas review:

> Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction.  See 28 U.S.C. § 2254(b), (c).  To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989) (emphasis omitted).  Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).

Maples v. Allen, 586 F.3d 879, 886 (11th Cir. 2009) (per curiam), petition granted in part, 131 S.Ct. 1718 (2011).

Procedural defaults may be excused under certain circumstances:  "[n]otwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice." Id. at 890 (citations omitted).  In order for Petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that

8

> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting Carrier, 477
> U.S. at 488, 106 S.Ct. 2639). Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." Id.
> at 1261 (quoting Carrier, 477 U.S. at 494, 106
> S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999), cert. denied,

528 U.S. 934 (1999).

In the absence of a showing of cause and prejudice, a

petitioner may receive consideration on the merits of a

procedurally defaulted claim if he can establish that a fundamental

miscarriage of justice, the continued incarceration of one who is

actually innocent, otherwise would result.  The Eleventh Circuit

has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim.  "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default." Carrier, 477 U.S. at
> 496, 106 S.Ct. at 2649.[5]  "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. Johnson v. Alabama, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

9

Id.  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense."  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)), cert. denied, 535 U.S. 926 (2002).  Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial."  Calderson v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).  With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected.  Schlup, 513 U.S. at 324.

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense."  Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The

10

> challenger's burden is to show "that counsel
> made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Id., at
> 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different. A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome." Id., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding." Id., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." Id., at 687, 104
> S.Ct. 2052.

Harrington, 131 S.Ct. at 787-88. Since both prongs of the two-part

Strickland test must be satisfied to show a Sixth Amendment

violation, "a court need not address the performance prong if the

petitioner cannot meet the prejudice prong, and vice-versa." Ward,

592 F.3d at 1163 (citation omitted). "Surmounting Strickland's

high bar is never an easy task." Harrington, 131 S.Ct. at 788

(quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is

accorded great deference. "The standards created by Strickland and

§ 2254(d) are both 'highly deferential,' [Strickland], at 689, 104

S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct.

2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem,

review is 'doubly' so, <u>Knowles</u>[6], 556 U.S., at ----, 129 S.Ct. at 1420." <u>Harrington</u>, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933. And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009); <u>see also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Johns claims that the evidence was constitutionally insufficient to support the convictions beyond a reasonable doubt. Johns argues that he is "actually innocent of all the charges lodged against him, and he has in fact, been

---

[6] <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411 (2009).

falsely accused of these heinous crimes by an alleged victim who had the motivation, opportunity, and wherewithal, to bring about these false allegations, against [him]." Petition at 5-1. Respondents contend that the claim is procedurally barred since it was raised in a procedurally incorrect manner in state court. See Response at 4-6. While Petitioner agrees that the claim has not been exhausted and is therefore barred procedurally, see Reply at 3-4, he nevertheless wishes to pursue the claim. However, Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that the claim is not procedurally barred, the State, in its appellate brief, addressed the claim on the merits. Resp. Ex. J at 15-20. Thus, the appellate court may have affirmed Petitioner's convictions based on the State's argument on the merits. If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[7] After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal

---

[7] See Harrington, 131 S.Ct. at 785.

law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is without merit.  The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt.  Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998).  In reviewing the sufficiency of evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)).  Jackson v. Virginia "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." Williams v. Sec'y for Dept. of Corr., 395 Fed.Appx. 524, 525 (11th Cir. 2010) (per curiam) (citing Green v. Nelson, 595 F.3d 1245, 1252-53 (11th Cir. 2010)) (not selected for publication in the Federal Reporter), cert. denied, 131 S.Ct. 1488 (2011).  In accordance with this authority, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged

offenses beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 319.

The victim Mary McCauley (Johns' ninety-six year old grandmother who lived with him and his wife) testified about Johns' sexual acts of digital penetration of her vagina and penile-vaginal touching, <u>see</u> Tr. at 232-33, 311-12, 376, as well as the attendant injuries inflicted upon her as a result of Johns' actions, <u>see</u> <u>id</u>. at 235-36, 361, 375.  McCauley testified that the doctor "put 18 stitches in [her] hand," <u>id</u>. at 361, and she has a scar on her knee as a result of Johns' actions, <u>see</u> <u>id</u>. at 375.  She stated that, when Johns pulled her legs apart, she thought she "was pulled apart."  <u>Id</u>. at 232, 317, 319.  She complained, at the trial, that she still had pain in her legs due to the incident.  <u>Id</u>. at 319.  When McCauley called 911, she reported that she was hurt and bleeding and needed assistance.  <u>Id</u>. at 240-41.  She testified that, when the police arrived at the trailer, Johns was still in her bedroom and in her bed.  <u>Id</u>. at 242.

Officer Taylor, who arrived at the trailer on February 8th at approximately 11:00 p.m., testified that he found Johns, who was intoxicated and unresponsive, lying on his back on the victim's bed with his underwear down around his ankles and with his right hand holding his penis.  <u>Id</u>. at 410-11, 413, 446.  Taylor stated his initial attempt to wake Johns failed, but after further attempts,

Johns awoke.  Id. at 412-13.  Taylor also affirmed that McCauley had blood on her body.  Id. at 448.

The State called Dr. Alison Bartfield, M.D., who testified that she had examined the victim in the emergency room on February 9th at 11:00 a.m.[8]  Tr. at 473.  Bartfield described the victim as "very coherent and articulate" on that February 9th morning, id. at 485, but "very sad, tearful" in explaining what Johns had done to her, id. at 475, 486.  She described the victim's injuries as follows: a sutured (three centimeters in length) knee; a twelve-centimeter laceration along her right arm extending to her wrist and hand, which had been sutured; a skin tear (three by five centimeters) on her right ankle, which had been sutured; a small abrasion on her nose; "[h]uge bruises on her upper arms" and antecubital fossa (the area opposite the elbow) area; and bruises on her leg.  Id. at 487-95, 501-02, 515.  In viewing photographic exhibits of the victim's injuries, Bartfield testified:

> It's a very unusual presentation.  I see arm bruises every single day, lots of older patients have fragile skin.  What's unusual about this is that it goes all the way around the arm, and most importantly that it's in what we call protected area of the arm which is the inside of the arm where most -- almost invariably if a person is to fall they'll fall protecting themselves such as putting their hand up or their hand out to try to catch their falls, so it's very difficult to injure

---

[8] Johns' sexual acts upon the victim occurred on February 8, 2004.  See Tr. at 406-07; Resp. Ex. A at 1-2, Arresting and Booking Report.

16

> the inside of your upper arm by merely a fall
> or a bump to furniture.

Id. at 495-96. Based on Bartfield's observations of the injuries, she stated that the victim's injuries were not accidental and are consistent with the victim's version of the events. Id. at 496, 508, 514. Moreover, she opined that "it's not medically possible for these injuries to have occurred from . . . [m]erely falls, that [they] are consistent with inflicted injury." Id. at 529-30.

Next, the State called Dr. Janet Attlesey, M.D. (Associate Medical Director for the Sexual Assault Response Center), who testified that she had examined the victim at the hospital in the early evening of February 10th. Id. at 545, 547. She described the victim's injuries:

> She had many bruises on her. And the thing that I noted was those bruises seemed to be -- I couldn't discretely write every single bruise and I wrote in my report there were too many, too numerous for me to go and count all of the bruises. And a lot of them were becoming confluent, coming together, so I didn't really have clear boundaries to say this is one discrete one, this is another discrete bruise, she was -- she had a lot of bruises on her. Her right arm was bruised all over, her left arm, her legs, her left knee was bandaged. I was not able to turn her over given her medical condition. . . .

Id. at 584. Attlesey recalled that the victim "was in a lot of pain." Id. at 585. In examining the victim, Attlesey saw blood in the two tears on the posterior fourchette (the area below the vagina toward the anus). Id. at 586-87, 620. She opined that the

probable cause of the tears was "[s]ome form of force." Id. at 622.

Among other defense witnesses, the defense called Mark Anthony Smith, M.D., the emergency room physician who first saw the victim at 4:15 a.m. on February 9th. Id. at 836, 839. He testified that he did not document any lacerations relating to the external perineal area, id. at 843, and acknowledged that he never looked at the posterior fourchette area, and thus could not comment as to whether the victim had any tears in that area, id. at 846.

Additionally, Johns testified that he was "very intoxicated" that day. Id. at 903, 911, 913, 920. He did not recall how he got into his grandmother's bed in her bedroom. Id. at 913. Moreover, he did not remember how his pants got down around his ankles. Id. at 914. Johns asserted that he neither sexually assaulted his grandmother nor intentionally caused her injuries. Id. at 915-17. He stated that he was in the shed outside the house, and when he looked to see if his grandmother had gone back into the house, he saw her on the ground. Id. at 902. He explained how he tried to pick her up off the ground, but had to use "some force" since "she would not pick up when [he] was trying to get around her muscles part."[9] Id. at 902-05. On rebuttal, Dr. Bartfield opined that the extent and distribution of the victim's injuries were not

---

[9] Johns testified that he was 5'10" and 240 pounds, and his grandmother was 5'8" and less than 100 pounds. Tr. at 916, 924.

consistent with Johns' account, but were consistent with the history that the victim had provided to her on February 9th.  Id. at 968.

Competent evidence of the elements of the offenses was introduced at trial, and no due process violation occurred.  The jury was entitled to believe the victim's account of what happened that day.  The victim's testimony in conjunction with the testimony of Officer Taylor and the physicians was sufficient for a reasonable jury to find that Johns committed the offenses.  Thus, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Johns committed the offenses of sexual battery upon a person twelve years of age or older with the use of physical force likely to cause serious personal injury (count one), sexual battery upon a person twelve years of age or older (count two), and aggravated battery on a person sixty-five years of age or older (count four).[10] Therefore, Petitioner is not entitled to habeas relief on ground one.

## B. Ground Two

As ground two, Petitioner claims that the state courts violated his rights to a fair trial and due process and equal protection of the law in that they allowed the prosecution to

---

[10] See Tr. at 991 (count one), 995 (count two), 1006 (count four).

denigrate and disparage his defense.   Johns asserts that the defense's theory was that his grandmother fabricated "the rape story" because she feared he was planning to move her to a nursing home and she did not like his drinking, partying, and friends, and therefore, created the story as a means to remove him from the home so that she could live in his house with his wife, whom she loved. Petition at 6A.   He states that the prosecution, twice in closing arguments, denigrated and disparaged the defense's theory of the case.   Id. at 6B-6H.

Respondents contend, and this Court agrees, that the claim is procedurally barred since it was raised in a procedurally incorrect manner in state court.   See Response at 9-10 (citing Resp. Ex. I, Initial Brief, at 24-25).   Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming the claim is not procedurally barred, the State, in its appellate brief, addressed the claim on the merits.   Resp. Ex. J at 21-26.   Thus, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits.   If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[11]

---

[11] See Harrington, 131 S.Ct. at 785.

After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is, nevertheless, without merit. The remarks at issue were not improper.[12] Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence. Tr. at 177-78, 1020; see Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009), cert. denied, 131 S.Ct. 917 (2011); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions."), cert. denied, 534 U.S. 1085 (2002). After thoroughly reviewing the record, viewing the remarks in the context of the trial as a whole,

---

[12] See Tr. at 1040, 1043 ("It's [an] old law school saying that when the facts are against you, you argue the law. When the law is against you, you argue the facts."), 1095 (stating "the defense's theory is every bit as absurd").

and assessing their "probable impact" on the jury, see United States v. Hill, 643 F.3d 807, 849 (11th Cir. 2011), this Court is convinced that the prosecutors' comments did not result in a due process violation.[13]

## C. Ground Three

As ground three, Petitioner claims his counsel was ineffective because she failed to object and request a mistrial after the prosecutor's alleged prejudicial question ("Is it possible little green men came down and caused the tears?") to Dr. Attlesey. Petition at 8-8G. As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion. Identifying the two-prong Strickland ineffectiveness test as the controlling law, the trial court denied the Rule 3.850 motion with respect to this issue, stating:

> In ground one, the Defendant claims that defense counsel rendered ineffective assistance for failing to object to and request a mistrial based on prejudicial remarks made by the State. Specifically, the Defendant complains of the State's redirect examination of Dr. Janet Attlesay[[14]], a

---

[13] The reversal of a conviction is warranted only when improper comments by a prosecutor have "'so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process.' Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))." Parker v. Head, 244 F.3d 831, 838 (11th Cir. 2001), cert. denied, 534 U.S. 1046 (2001).

[14] The proper spelling is "Attlesey." Tr. at 544.

physician with the Sexual Assault Response Center, in which the State asked Dr. Attlesay if it was possible that little green men came down and caused the tears on the victim's posterior fourchette.  Initially, this Court notes that the Defendant fails to state under which legal grounds counsel should have objected, nor does the Defendant show any prejudice flowing from the statement.  The Defendant bears the burden of establishing a valid ineffective assistance claim.  <u>Freeman v. State</u>, 761 So.2d 1055, 1061 (Fla. 2000); <u>Kennedy v. State</u>, 547 So.2d 912 (Fla. 1989); <u>Parker v. State</u>, 603 So.2d 616, 617 (Fla. 1st DCA 1992).  In <u>Parker v. State</u>, the First District Court of Appeal affirmed the denial of Parker's Rule 3.850 motion where the Court found that Parker had failed to meet his burden:

> Appellant's allegations of ineffective assistance of counsel are stated as mere conclusions, unsupported by allegations of specific facts which, when considered in the totality of the circumstances, are not conclusively refuted by the record and demonstrate a deficiency of counsel that was detrimental to the defendant. As such, the allegations are facially insufficient to demonstrate entitlement to relief.

<u>Id</u>. at 616.  The Florida Supreme Court affirmed this ruling stating it would not address the issues "because they are bare bones, conclusory allegations."  <u>Parker v. State</u>, 904 So.2d 370, 375 n.3 (Fla. 2005); <u>see</u> <u>Gordon v. State</u>, 863 So.2d 1215, 1218 (Fla. 2003) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing.").  This Court finds that the Defendant's claim is conclusory.  <u>Parker</u>, 904 So.2d at 375; <u>Strickland</u>, 466 U.S. 668.

Further, when the statement is viewed in context, this Court finds no error in defense counsel's failure to object.   During cross examination of Dr. Attlesay, defense counsel thoroughly questioned Dr. Attlesay regarding the various possible causes of the tears:

Defense counsel:  The tears that you saw in this case, could they have occurred if she scratched her vaginal area?

Dr. Attlesay: It's possible.

Defense counsel:  Could they also have occurred if she touched herself in her vaginal area?

Dr. Attlesay: Sure.

Defense counsel: Could those genital -- could those tears that you saw have occurred from her washing her genitals?

Dr. Attlesay: Anything is possible.

Defense counsel: But you would agree that the type of tear that you saw is something that can ordinarily happen if someone is washing?

Dr. Attlesay: No, absolutely not.

Defense counsel: The tear that you saw, it's something that could occur from washing the genital area?

Dr. Attlesay: I suppose it could.

Defense counsel: Could that tear occur from someone wiping after urinating?

Dr. Attlesay: I suppose it could, highly unlikely, but I suppose it could, anything is possible.

> Defense counsel: The tear you saw[,]
> it's not -- it wasn't [a]
> laceration, it wasn't too deep?
>
> Dr. Attlesay: No.

(Exhibit "C," pages 609-610.)   Then, on
redirect examination, the State questioned Dr.
Attlesay to further elaborate on the various
possible causes of the tears and the
likelihood of each possibility actually
causing a tear:

> The State: You had said that it is
> possible that it could come from a
> scratch in the vaginal area or is it
> likely that it would come from that?
>
> Dr. Attlesay: No.
>
> The State: You had said it was
> possible that someone could touch
> their vaginal area and it would
> cause a tear, is that medically
> likely?
>
> Dr. Attlesay: No. In particular the
> area that we're talking about, if
> she was going to scratch herself
> this way she would more likely
> injure the anterior part of the
> vagina, not the post area that was
> injured.  She would have to be
> coming from behind with her fingers.
>
> The State: And that would apply to
> washing the genital area as well?
>
> Dr. Attlesay: I guess so.
>
> The State: Is anything possible?
>
> Dr. Attlesay: Anything is possible.
>
> **The State: Is it possible that
> little green men came down and
> caused the tears?**

> Dr. Attlesay: Yes, it's possible[,] but not probable.
>
> The State: What is your medical opinion as to the probable cause of the tears that you witnessed in Miss McCauley?
>
> Dr. Attlesay: Some form of force.
>
> (Exhibit "C," pages 621-622.) Thus, when the comments are viewed in their full context, it is evident that the State was illustrating that although there could be numerous possible causes of the tearing, what probably caused the tearing was some form of force from the Defendant. Accordingly, the Defendant has failed to establish error on the part of defense counsel or prejudice to his case. Strickland, 466 U.S. 668. As such, the Defendant's first ground is denied.

Resp. Ex. R at 93-96 (emphasis added). Upon Petitioner's appeal, the appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion as to this claim on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit.  The record supports the trial court's findings.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  Dingle v. Sec'y for Dept. of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), cert. denied, 552 U.S. 990 (2007).  Petitioner has failed to carry this burden.

Moreover, as the 3.850 court concluded in denying the Rule 3.850 motion, the prosecution was attempting to show the jury that, despite the various possible causes of the tearing, the probable

27

cause was some form of force by Johns.  Given the record, counsel's performance was within the wide range of professionally competent assistance.   Even  assuming  arguendo  deficient  performance  by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the question and requested a mistrial.  Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### IX. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claim fails.  <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009).  The remainder of Petitioner's claims are either procedurally barred or without merit.  Accordingly, for these reasons, the Petition will be denied, and this case will be dismissed with prejudice.

### X. Certificate of Appealability<br>Pursuant to 28 U.S.C. § 2253(c)(1)

If  Petitioner  seeks  issuance  of  a  certificate  of appealability,  the  undersigned  opines  that  a  certificate  of appealability  is  not  warranted.   This  Court  should  issue  a certificate  of  appealability  only  if  the  Petitioner  makes  "a

substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of February, 2012.


MARCIA MORALES HOWARD
United States District Judge


sc 2/28
c:
Lloyd William Johns
Ass't Attorney General (McCoy)

30